UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**STEVEN D. BURDICK,**

                              **Plaintiff,**

               **-v-**                              **5:12-CV-1711 (NAM/DEP)**

**OSWEGO COUNTY, OSWEGO COUNTY SHERIFF'S
DEPARTMENT, OSWEGO COUNTY SHERIFF
RUELL TODD, OSWEGO COUNTY DEPUTY
JAMES F. DARLING,**

                              **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Steven D. Burdick
Plaintiff, *pro se*

The Law Firm of Frank W. Miller
Frank W. Miller, Esq., of counsel
Bryan Georgiady, Esq., of counsel
6575 Kirkville Road
East Syracuse, New York 13057
Attorneys for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

        Defendants move (Dkt. No. 12) to dismiss the complaint for failure to state a claim. Fed.

R. Civ. P. 12(b)(6). Plaintiff cross moves (Dkt. No. 18) to amend the complaint. Plaintiff,

proceeding *pro se*, claims he was subjected to constitutional and state law violations in

connection with a vehicle stop which resulted in his arrest and prosecution in Town of West

Monroe Justice Court. The Court grants defendants' motion in part and denies it in part, and

gives plaintiff leave to file an amended complaint in accordance with this Memorandum-Decision

and Order.

## BACKGROUND

### Applicable law

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See ATSI*, 493 F.3d at 98. A complaint should be "especially liberally construed when it is submitted *pro se* and alleges civil rights violations." *See Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

A court should not dismiss a *pro se* complaint without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991)) (alteration omitted). And, where leave to amend is requested, leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Where, however, leave to amend would be futile, it is properly denied. A court may determine that amendment would be futile where "the problem with [a plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). In

determining whether to grant leave to amend a *pro se* complaint, the Court may properly consider plaintiff's submissions outside the complaint. *See, e.g., Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 (2d Cir. 1998); *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987).

### Complaint

In the initial *pro se* complaint, plaintiff makes the following factual allegations[1]:

12. On or about the 22nd day of November 2009 at approximately 1:00 p. m. Plaintiff was driving his wife's vehicle, a 1999 Plymouth Voyager, East on State Route forty-nine (49) in the Village of Central Square - County of Oswego - State of New York, when Plaintiff encountered a temporary New York vehicle safety inspection check-point/road-block set up and maintained by the Oswego County Sheriff's Department.

13. Plaintiff was accompanied by his two minor children (his daughter K[.] B[.] six-years-old and his son, M[.] B[.] age eighteen months) who were rear seat passengers in the vehicle on November 22, 2009.

14. Plaintiff was flagged for a motor vehicle violation (NY vehicle safety Inspection Sticker not displayed - vehicle had passed 2009 NY safety inspection however the valid inspection sticker once affixed in left lower corner of windshield had come loose and fallen off at some point because of faulty adhesive chosen by NYS in the manufacture of said Safety Inspection Sticker) during the course of a temporary vehicle safety checkpoint; and after Oswego County Deputy Darling conducted a search inquiry on Plaintiff, Plaintiff's driver's license number and said vehicle through the New York Department of Motor Vehicles (hereafter known as DMV) internal records database; the DMV database information incorrectly reflected that Plaintiff's driving privilege/license was administratively suspended for failure to pay a $5.00 fine out of the Court of Van Buren.

15. Defendant, Deputy Darlington told Plaintiff to step out of the vehicle and Plaintiff complied with Deputy Darlington's request after a brief discussion between Plaintiff and Defendant about the inaccuracy of the DMV inquiry search results, the paid fine in Town of Van Buren Court and Plaintiff's concern about safety issues leaving the Plaintiff's two minor children alone in the vehicle unrestrained and unsupervised and/or improperly supervised by strangers.

---

[1] The Court quotes directly from plaintiff's submissions without noting or correcting errors.

16. Plaintiff stepped out of the vehicle, was falsely arrested and handcuffed in the presence of, and within view of his two young minor children, and was falsely detained and confined without his permission and against his will in the rear seat of the Oswego County Deputy Darlington's patrol car; Plaintiff was further falsely detained and confined for several hours without his permission and against his will, when Plaintiff was taken to Central Square, New York for arraignment before Judge Avery and then to the Oswego County Public Safety Center Oswego, New York for booking.

17. Plaintiff was maliciously prosecuted and suffered defamation of character when he was falsely arrested and falsely imprisoned and the Oswego County Sheriff's Department and the Office of the Oswego County District Attorney wrongful, intentional negligent, ordinary negligent and/or grossly negligent acts and/or omission of acts caused the Claimant to be maliciously prosecuted for: NY VTL 511-1 Aggravated Unlicensed Operator 3rd degree, NY Penal Law 195.05 Obstruction of Governmental Administration and NY Penal Law 260.10(1) Endangering the Welfare of a Child and caused the same to be publicized.

18. Plaintiff was subjected to illegal and discriminatory and retaliatory acts, unfair actions, policies, practices, procedures, false arrest, false imprisonment, defamation of character-slander and libel and malicious prosecution because of Defendant(s)s' intentional and/or ordinary negligence and/or Defendant(s)s' intentional gross and/or reckless misconduct in retaliation of Plaintiff's prior public and published negative criticism of New York State Government, New York State Police, Oswego County Sheriff's Department, Oswego County Government, Oswego County Department of Social Services and their respective policies and procedures. ...
***
20. Since the false arrest and false imprisonment of the Plaintiff on November 22, 2009 Defendant Oswego County has engaged in a continuous campaign of defamation of character, malicious prosecution, and harassment and intimidation of the Plaintiff and is continuing to the present date;

21. Defendant Oswego County and/or its agents has repeatedly and with intent to harass the Plaintiff, has, on occasions sneered, laughed, smirked, stared at, injected itself into situations with the Plaintiff, glared at, crowded the Plaintiff in a hostile manner, and continues its malicious prosecution of the Plaintiff[.]

Plaintiff asserts a number of federal constitutional violations in his first, fifth, and seventh

causes of action under 42 U.S.C. § 1983 ("section 1983"), including infringement of his right to

-4-

equal protection, his Fourth Amendment protection from unreasonable seizure, and his First Amendment right to freedom of speech (retaliation). The remaining causes of action are state law claims. The second cause of action claims false arrest; the third claims false imprisonment; the fourth claims defamation; and the sixth claims outrageous conduct. Plaintiff seeks compensatory and punitive damages and injunctive relief.

## Motion for Leave to Amend Complaint

In support of his motion for leave to amend his complaint, plaintiff submits the following "Statement of Facts":

1.  On the 22nd day of November 2009 in the Village of Central Square - County of Oswego - State of New York, Defendants, Oswego County Sheriffs Deputy James F. Darling, Oswego County Sheriff's Department, Sheriff Ruell Todd did falsely arrest, falsely detain, and falsely confine the Plaintiff and subsequent to the arrest of Plaintiff, the Office of the Oswego County District Attorney did maliciously prosecute the Plaintiff. This false arrest, false detainment, false confinement, and malicious prosecution gave rise to the present action.

2. On November 22, 2009, the Plaintiff encountered a temporary New York vehicle safety inspection check-point/road-block set up and maintained by the Oswego County Sheriff's Department on State Route forty-nine (49) in the Village of Central Square - County of Oswego - State of New York. Plaintiff was accompanied by his two minor children (his daughter K.B. six-years-old and his son, M.B. age eighteen months) who were rear seat passengers in the vehicle on November 22, 2009.

3. Plaintiff was unable to produce his driver's license and the registration and insurance documents at the aforementioned check-point/road-block; Plaintiff was operating his wife's vehicle and could not locate the requested vehicle information documents in the vehicle.

4. Deputy Darling flagged-directed Plaintiff to pull off the highway into an adjacent parking lot/area to wait for a motor vehicle violation ticket. While waiting for the Deputy, the Plaintiff's two young children, six-year old daughter and his eighteen-month old son, had extricated themselves from their respective child safety restraint seats.

5.   Oswego County Deputy Darling conducted a search inquiry on Plaintiff and the vehicle operated by the Plaintiff, through the New York Department of Motor Vehicles; the internal records database and the DMV database information incorrectly reflected that Plaintiff's driving privilege/license was administratively suspended for failure to pay a $5.00 fine out of the Court of Van Buren. Deputy Darling informed Plaintiff that he was under arrest for operating a motor vehicle with a suspended driver's license and directed Plaintiff to throw his kid off to the side and directed Plaintiff to exit the vehicle.

6.   A discussion ensued between Plaintiff and Deputy Darling about the alleged suspension and Plaintiff informed Deputy Darling that there must be some mistake; Plaintiff had paid the $5.00 traffic violation fine out of Van Buren, that his driver's license was not currently suspended and that Plaintiff's driver's license had never been suspended by the DMV. Plaintiff did not have proof/receipt for payment of fine from the Town of Van Buren Court as more than 120 days had elapsed since the Town of Van Buren had acknowledged payment and issued receipt.

7.   Plaintiff expressed concern about the safety issues involved in leaving the Plaintiff's two minor children alone in the vehicle unrestrained and unsupervised and/or improperly supervised by strangers. Plaintiff requested to be allowed to properly restrain his children in their respective child safety seats/restraints prior to exiting the vehicle. Deputy Darling refused to grant Plaintiff's request and demanded that Plaintiff immediately exit the vehicle.

8.   Plaintiff was falsely arrested and handcuffed in the presence of, and within view of his two young minor children; Deputy Darling, Oswego County Sheriff's Department and Sheriff Ruell Todd falsely detained and confined Plaintiff without his permission and against his will.

9. Plaintiff, while sitting in the rear compartment of the patrol car, did inform Deputy Darling that Plaintiff had an old, severe back/spine injury and did complain to Deputy Darling that the handcuffs tightly fastened behind his back was causing the plaintiff a lot of pain and discomfort.  Handcuffs were behind Plaintiff's back and fastened so tightly that Plaintiff experienced severe pain and numbness in his back and extremities, causing and restricting/impairing blood circulation in the Plaintiff's back/spine, shoulder, neck, arm and wrist.

10. Respondent Deputy Darling did transport Plaintiff to the Oswego County Public Safety Center where Plaintiff politely requested to use the restroom and asked Deputy Darling to take the handcuffs off to facilitate using the restroom. Respondent, Deputy Darling, when putting the handcuffs back on

the Plaintiff, did forcefully and roughly fasten the handcuffs behind Plaintiff's back so tightly, even tighter than before, so that the handcuffs pinched into the Plaintiff's wrist, causing pain, numbness and restricted/impaired blood circulation in the Plaintiff's back/spine, shoulder, neck, arm and wrist. Plaintiff did seek medical attention after his release on bail.

11.    The Oswego County Sheriff's Department and Oswego County Sheriff Ruell Todd did issue untrue and false statements to the news media concerning the circumstances of the Plaintiff's arrest and Plaintiffs conduct/behavior prior to, and during the arrest of Plaintiff, and did cause the same to be published.

12.    Oswego County Sheriff's Department and Ruell Todd did not advise the Plaintiff of his Miranda Rights at a November 23, 2009 meeting to discuss the misconduct and inappropriate actions of Deputy James F. Darling; Plaintiff was harassed, intimidated, and belittled by Sheriff Ruell Todd during this meeting.

13.  Shortly after Plaintiff's arraignment and release pre-trial, Plaintiff produced clear and convincing documentary proof/evidence that his license was not suspended at the time of his arrest, and in fact had never been suspended at any point in time. The Office of the Oswego County District Attorney (hereafter D.A.) refused to accept the evidence and despite evidence to the contrary, continued its prosecution of the Plaintiff in the matter of the AUO charge (Huntley Hearing Transcript-2nd part, p.32, August 16, 2010). On or about June 6, 2013, the trial court (Town of West Monroe-Justice Kimberly Inman) did dismiss the charge of AUO against the Plaintiff after the D. A. finally acknowledged and accepted the Plaintiff's evidence of DMV error and declined to prosecute further the charge of AUO.

14. Trial by jury on August 27, 2011.

15. There was favorable termination to the accused on the criminal charges of Endangering the Welfare of a child and Aggravated Unlicensed Operation of a motor vehicle (charge dismissed). Plaintiff was found guilty by jury trial on charge of Obstruction of Government Administration 2 and failure to display inspection certificate.  (Appeal pending.)

As exhibits to his motion to amend the complaint, plaintiff submits various documents

relating to the criminal prosecution, including the transcript of his jury trial before Hon. Kimberly

Inman, Justice of Town of West Monroe, on the charges lodged against him by Deputy Darling

stemming from the November 22, 2009 incident.  The charges are as follows: obstructing

governmental administration, 2d degree, N.Y. Penal Law 195.05(1), a class A misdemeanor;

endangering the welfare of a child, Penal Law 260.10(1), a class A misdemeanor; aggravated

unlicensed operation of a motor vehicle, 3d degree, N.Y. Veh. & Traf. L. § 511(1), a

misdemeanor; operation of motor vehicle without inspection certificate, N.Y. Veh. & Traf. L. §

306(b); and registration violation, N.Y. Veh. & Traf. L. § 401(1)(a).  Not all documents from the

town court proceeding are included in the record.  It appears from the transcript that the charge of

aggravated unlicensed operation of a motor vehicle was not submitted to the jury.  On August 27,

2011, the jury convicted plaintiff of failure to produce his motor vehicle registration, operation of

an uninspected motor vehicle, and obstruction of governmental administration, and acquitted him

on the remaining charge, endangering the welfare of a child.  According to plaintiff, at some point

Justice Inman dismissed the charge of aggravated unlicensed operation of a motor vehicle.

        In determining whether plaintiff has stated a cause of action and, if not, whether he should

be granted leave to replead, the Court considers the entire record to the extent that it assists

plaintiff.  The Court takes judicial notice of the documents submitted by plaintiff concerning the

criminal prosecution in town court.  Further, the Court reads plaintiff's submissions liberally and

interprets them to raise the strongest arguments that they suggest.

<h2 style="text-align:center">42 U.S.C. § 1983, GENERALLY</h2>

        Plaintiff asserts his federal law claims under 42 U.S.C. § 1983.  "Recovery under 42

U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a

constitutional or federal statutory right and, second, that such denial was effected under color of

state law."  *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985).  Because plaintiff asserts his

-8-

section 1983 claims against a municipal entity and law enforcement officers, the second element is satisfied as a matter of law. The federal constitutional rights asserted are discussed below.

## MUNICIPAL LIABILITY

Oswego County Sheriff's Department is merely an arm of the County of Oswego, and therefore lacks the capacity to be sued. *See, e.g., Holley v. County of Orange*, 625 F.Supp.2d 131, 144 (S.D.N.Y. 2009). All claims against the Oswego County Sheriff's Department are deemed to be claims against Oswego County, and the claims as stated against the Sheriff's Department are dismissed without leave to replead on the ground that the Sheriff's Department is not the proper defendant. Any claims which plaintiff may wish to assert against the Sheriff's Department in an amended complaint should be asserted against Oswego County, which is the proper defendant.

As for plaintiff's claims against Oswego County, the Court notes that a municipality can not be held liable under 42 U.S.C. § 1983 solely on a *respondeat superior* theory. *See Monell v. Department of Social Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978). All section 1983 claims based on *respondeat superior* are dismissed without leave to replead.

Plaintiff further alleges that Oswego County was aware of and failed to take action to correct unlawful customs and policies of its agents and employees, and that such policies or customs led to the violation of his constitutional rights. Such a claim is cognizable under *Monell*. "To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. County of Monroe*, 351 Fed.Appx. 543, 546 (2d Cir. 2009). Plaintiff makes no such factual

allegations.  All section 1983 claims against Oswego County based on a municipal custom or policy are dismissed with leave to replead.

Under New York State law, a municipality may be liable under *respondeat superior*.  *See Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012).  Thus, if one or more of plaintiff's state law claims against the individual defendants were to survive, plaintiff could proceed on those state law claims against Oswego County as well.  As set forth below, the Court dismisses all state law claims for failure to serve a timely notice of claim; therefore, plaintiff's state law *respondeat superior* claims against Oswego County are dismissed.  The dismissal is with leave to move for reconsideration in the event that plaintiff is able to demonstrate that he did serve a timely notice of claim.

### DEFENDANT RUELL TODD

Although plaintiff names Oswego County Sheriff Ruell Todd in his complaint, it is not clear what claims he intends to assert against him.  There are no factual allegations suggesting that Sheriff Todd was present during the November 22, 2009 incident or that he was otherwise personally involved in the incident.  "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  A supervisor's personal involvement may be shown by evidence of his direct participation in the challenged conduct, or by evidence of his "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct

of subordinates." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003) (citations

omitted).  Plaintiff presents no allegations supporting such liability.

Factual allegations against Sheriff Todd in plaintiff's Statement of Facts in support of his

motion for leave to amend the complaint state as follows:

> 1.   On the 22nd day of November 2009 in the Village of Central Square -
> County of Oswego - State of New York, Defendants, Oswego County Sheriffs
> Deputy James F. Darling, Oswego County Sheriff's Department, Sheriff Ruell
> Todd did falsely arrest, falsely detain, and falsely confine the Plaintiff and
> subsequent to the arrest of Plaintiff; the Office of the Oswego County District
> Attorney did maliciously prosecute the Plaintiff.  This false arrest, false
> detainment, false confinement, and malicious prosecution gave rise to the
> present action.
> ***
> 8.  Plaintiff was falsely arrested and handcuffed in the presence of, and within
> view of his two young minor children; Deputy Darling, Oswego County
> Sheriff's Department and Sheriff Ruell Todd falsely detained and confined
> Plaintiff without his permission and against his will.
> ***
> 11.   The Oswego County Sheriff s Department and Oswego County Sheriff
> Ruell Todd did issue untrue and false statements to the news media
> concerning the circumstances of the Plaintiff's arrest and Plaintiffs
> conduct/behavior prior to, and during the arrest of Plaintiff, and did cause the
> same to be published.
>
> 12.   Oswego County Sheriff's Department and Ruell Todd did not advise the
> Plaintiff of his Miranda Rights at a November 23, 2009 meeting to discuss the
> misconduct and inappropriate actions of Deputy James F. Darling; Plaintiff
> was harassed, intimidated, and belittled by Sheriff Ruell Todd during this
> meeting.

Aside from conclusory allegations, plaintiff's sole allegations against Sheriff Todd are that he

released false statements to the media, that he did not advise plaintiff of his Miranda rights at a

meeting on November 23, 2009, and that he harassed and intimidated plaintiff at that meeting.  As

such, plaintiff does not state any cognizable section 1983 claim against Sheriff Todd.  As

discussed below, any state law claim against Sheriff Todd is barred by plaintiff's failure to file a

-11-

timely notice of claim. Plaintiff's present complaint and other submissions fail to assert a cause of action against Sheriff Todd, and plaintiff's section 1983 claims against him are dismissed with leave to replead.

### FIRST CAUSE OF ACTION - 42 U.S.C. § 1983

#### *Equal Protection*

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). In *Harlen Assocs.*, the court explains: "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." 273 F.3d at 499. A valid "class of one" equal protection claim may be stated "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). To succeed on such a claim, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.*

-12-

Plaintiff does not allege specific examples of more favorable treatment of anyone whose circumstances bore an extremely high degree of similarity to plaintiff's.[2]  The equal protection claim is therefore dismissed for lack of factual allegations to support a plausible class-of-one claim.  *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (granting Rule 12(b)(6) dismissal of class-of-one claim against Town where plaintiffs "do not allege specific examples of the Town's proceedings, let alone applications that were made by persons similarly situated.").  Dismissal is without prejudice; plaintiff may replead this claim in an amended complaint if he so desires.

## *False Arrest*

Except for the requirement that the constitutional tort be under color of state law, the elements of a section 1983 claim for unreasonable seizure in violation of the Fourth Amendment are the same as the elements of a state law claim for false arrest under state law, *i.e.*, "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (citation omitted).  The same elements underlie a claim for false imprisonment.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  A warrantless arrest of an individual in a public place for a

---

[2] The Court agrees with the Tenth Circuit's observation in *Kansas Penn Gaming, LLC v. Collins*:
> We have approached class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional causes.... These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. The latitude afforded police officers ... and other similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed.

656 F.3d 1210, 1216-17 (10th Cir. 2011) (internal citations and quotation marks omitted);

misdemeanor committed in the officer's presence does not offend the Fourth Amendment if the arrest is supported by probable cause. *See United States v. Watson*, 423 U.S. 411, 424 (1976). Probable cause is a complete defense to a cause of action for false arrest. *Curry*, 316 F.3d at 335. Probable cause is established "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (citations and quotation marks omitted).

        In his complaint and other submissions, plaintiff acknowledges that Deputy Darling's computer database check showed that plaintiff was operating the vehicle while his license was suspended. Probable cause to arrest and detain can arise from computer information where police have no evidence that the information is false or invalid. *See United States v. Miller*, 382 F. Supp. 2d 350, 368-69 (N.D.N.Y. 2005); *Johnson v. Harron*, 1995 WL 319943, *8-9 (N.D.N.Y. May 23, 1995). Operation of a vehicle while license is suspended, 3d degree, is a misdemeanor, *see* N.Y. Veh. & Traf. L. 511(1)(b); thus, Deputy Darling had probable cause to arrest plaintiff. The arrest and detention were privileged, and based on plaintiff's own allegations, the cause of action lacks merit. Nothing in plaintiff's submissions suggests that he has a valid false arrest/false imprisonment claim that he should be given a chance to replead. The claim is dismissed with prejudice and without leave to replead.

### *Excessive Force*

        While plaintiff does not expressly assert a claim that he was subjected to excessive force in the course of his arrest, transport, and detention, the statement of facts he submits in support of his motion for leave to amend includes allegations that may be construed as a claim that his

-14-

Fourth Amendment protection against unreasonable seizure of his person was infringed when he was subjected to excessive force.  *See generally Graham v. Connor*, 490 U.S. 386, 395 (1989).  A law enforcement officer's use of force is excessive under the Fourth Amendment when his actions were "objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'"  *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397).  Plaintiff alleges that, while sitting in the patrol car, he "complain[ed] to Deputy Darling that the handcuffs tightly fastened behind his back was causing the plaintiff a lot of pain and discomfort."  Plaintiff further alleges that the handcuffs "were behind [his] back and fastened so tightly that Plaintiff experienced severe pain and numbness in his back and extremities, causing and restricting/impairing blood circulation in the Plaintiff's back/spine, shoulder, neck, arm and wrist."  Later, at the Oswego County Public Safety Center, Deputy Darling removed the handcuffs to permit plaintiff to use the restroom.  According to plaintiff, when putting the handcuffs back on him, Deputy Darling "did forcefully and roughly fasten the handcuffs behind Plaintiff's back so tightly, even tighter than before, so that the handcuffs pinched into the Plaintiff's wrist, causing pain, numbness and restricted/impaired blood circulation in the Plaintiff's back/spine, shoulder, neck, arm and wrist."  Plaintiff adds that he "did seek medical attention after his release on bail."

Regarding claims for excessive force in the use of handcuffs, the standard applied in this circuit is as follows:

> While handcuffs must be reasonably tight to be effective, handcuffs that are overly tight may constitute an excessive use of force on the part of the officer using them.  In evaluating the reasonableness of handcuffing, a court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists.  There is a consensus among District

-15-

> Courts in this Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising.

*Hollins v. City of New York*, 2014 WL 836950, *9 (Mar. 3, 2014) (citations, alterations, and quotation marks omitted).  Plaintiff here, while stating that he sought medical attention, does not allege that he sustained any injury beyond temporary discomfort, or that he received any treatment.  This information is plainly within plaintiff's possession.  The cause of action is dismissed for failure to plead facts supporting a plausible claim of excessive force arising from the handcuffing.  If plaintiff chooses to replead, he should include factual allegations in this regard.

### *Substantive Due Process*

Plaintiff's intention regarding a substantive due process claim is unclear.  Plaintiff's sixth cause of action for outrageous conduct, which does not cite section 1983, may be intended to state such a claim, possibly based on Deputy Darling's alleged interference with his control over his children during the November 22, 2009 incident.  In this respect, the Second Circuit explains:

> The interest of natural parents in the care, custody, and management of their child is a fundamental liberty interest protected by the Fourteenth Amendment.  Family members have, in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state.  This right is amplified by the more general substantive due process right of all people to be free of government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense.

*Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (citations, brackets, and quotation marks omitted).  Even assuming plaintiff's allegations to be true, and drawing all inferences in his favor, he fails to state a plausible substantive due process claim on this ground.  As the Second Circuit explains, "[a]bsent truly extraordinary circumstances, a brief deprivation of

custody is insufficient to state a substantive due process custody claim." *Id.* Because such

temporary deprivations "do not result in the parents' wholesale relinquishment of their right to

rear their children, ... they are not constitutionally outrageous or conscience-shocking." *Id.*

(citation and quotation marks omitted).

    To the extent plaintiff intends to claim that he was denied substantive due process by

Deputy Darling's alleged excessive force, false arrest, and/or malicious prosecution, these claims

are properly analyzed under the Fourth Amendment, not as substantive due process claims. *See

United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) ("[I]f a constitutional claim is covered by a

specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be

analyzed under the standard appropriate to that specific provision, not under the rubric of

substantive due process."); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular

Amendment provides an explicit textual source of constitutional protection against a particular

sort of government behavior, that Amendment, not the more generalized notion of substantive due

process, must be the guide for analyzing these claims." (citation and internal quotation marks

omitted)). Likewise, to the extent that plaintiff claims he was denied substantive due process by

defendants' malicious abuse of criminal process, the claim is properly brought under the

procedural due process protection of the Fifth and Fourteenth Amendments; these claims are

discussed below.

    Any section 1983 substantive due process claim plaintiff may have intended to allege is

dismissed. In view of plaintiff's *pro se* status and the lack of clarity regarding plaintiff's

intentions regarding this claim, the dismissal is with leave to replead.

<u>*Retaliation*</u>

-17-

As a general rule, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quotation marks omitted).  To prevail on a First Amendment retaliation claim, a plaintiff must show (1) that he has an interest protected by the First Amendment; (2) that defendant's actions were motivated or substantially caused by his exercise of that right; and (3) that defendant's actions effectively chilled the exercise of his First Amendment right, or caused some other sort of harm.  *See Gill v. Pidlypchak*, 389 F.3d 379, 383 (2004); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Regarding the first element, plaintiff's general and conclusory allegations regarding his "prior public and published negative criticism of New York State Government, New York State Police, Oswego County Sheriff's Department, Oswego County Government, Oswego County Department of Social Services and their respective policies and procedures," are insufficient to plead the exercise of a First Amendment right so as to support a plausible claim for retaliation.  If plaintiff chooses to replead this cause of action, the Court recommends that he provide facts regarding his alleged exercise of his First Amendment rights.

The third element is met by plaintiff's showing that he was arrested and charged with crimes.  As for the second element, improper motive, where an officer has probable cause to arrest or charge the plaintiff, courts do not examine the officer's underlying motive.  *See Singer*, 63 F.3d at 120 (citations omitted); *accord Curley*, 268 F.3d at 73.  Here, as a matter of law, plaintiff cannot establish a retaliatory motive for his arrest, because – as this Court has already found – it was supported by probable cause. Nor can plaintiff establish a retaliatory motive for Deputy Darling's alleged conduct in charging him on the crimes for which he was convicted.  The

-18-

Court cannot, however, rule out a retaliatory motive for Deputy Darling's conduct in charging plaintiff with endangering the welfare of a child, the acquitted conduct, nor can the Court rule out a retaliatory motive for Deputy Darling's conduct in pursuing the charge of unlicensed operation of a motor vehicle, depending on when Deputy Darling knew or should have known that plaintiff in fact had a valid license. If plaintiff chooses to replead, in addition to facts showing that he exercised a First Amendment right, plaintiff should also allege facts supporting his contention that the actions of Deputy Darling in charging him with endangering the welfare of a child, and/or pursuing the charge of unlicensed operation of a motor vehicle were motivated or substantially caused by his exercise of that right. If plaintiff believes that some other person is responsible for this alleged retaliation instead of, or in addition to, Deputy Darling, plaintiff should set forth the facts supporting that claim. Accordingly, plaintiff's First Amendment retaliation claim is dismissed with leave to replead as set forth herein.

### FIFTH CAUSE OF ACTION - MALICIOUS PROSECUTION - 42 U.S.C. § 1983

Plaintiff's fifth cause of action pursuant to section 1983 sounds in malicious prosecution. "[A] plaintiff who has alleged that a criminal prosecution was initiated against him without probable cause has not stated a § 1983 claim for violation of his right to substantive due process. Rather, in order to prevail on such a claim under § 1983, the plaintiff must show a violation of his rights under the Fourth Amendment." *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994)). A section 1983 malicious prosecution claim comprises the elements of the state law claim, plus a federal constitutional deprivation, as follows:

> The elements of a malicious prosecution claim under New York law are (1) that the defendant initiated a prosecution against the plaintiff, (2) that the

> defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.  In order to allege a cause of action for malicious prosecution under § 1983, plaintiff must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.

*Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2000) (citations, brackets, and quotation marks omitted).

Plaintiff cannot pursue a malicious prosecution claim regarding the three convicted charges – failure to produce a registration certificate, operation of an uninspected motor vehicle, and obstruction of governmental administration – because the prosecution was not terminated in his favor on those charges.  Defendants argue that the malicious prosecution claim must also be dismissed as to the acquitted charge of endangering the welfare of a child and the dismissed charge of unlicensed operation of a vehicle, because the fact that plaintiff was convicted on some charges established that Deputy Darling had probable cause to believe the proceeding could succeed.  The fact that plaintiff was convicted on some charges does not, however, bar him from claiming that he was maliciously prosecuted on the acquitted and dismissed charges.  *See Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *Ostroski v. Town of Southold*, 443 F.Supp.2d 325, 335-36 (E.D.N.Y. 2006); *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (emphasizing "the need to separately analyze the charges claimed to have been maliciously prosecuted").

Plaintiff's initial complaint may be read to allege that Deputy Darling initiated the prosecution by filing the charge of endangering the welfare of a child, *see Ricciuti v. New York*

*City Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997), while lacking probable cause to believe that

it could succeed, and that he did so with malice.  *See id.* (noting that lack of probable cause

generally raises an inference of malice); *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (noting

that "vengeance" satisfies the actual malice requirement).  Thus, plaintiff  adequately pleads the

first four elements of a malicious prosecution claim based on the charges of endangering the

welfare of a child.  As for the final element – a post-arraignment liberty restraint implicating

plaintiff's Fourth Amendment rights – plaintiff's trial on the charge of endangering the welfare of

a child satisfies this element.  *See Jocks v Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("[T]he

requirements of attending criminal proceedings and obeying the conditions of bail suffice" to

show post-arraignment liberty restraint).  In view of plaintiff's *pro se*  status, the Court finds that

he adequately pleads a plausible malicious prosecution claim against Deputy Darling stemming

from the charge of endangering the welfare of a child.

   With respect to the charge of unlicensed operation of a motor vehicle, it is undisputed that

Deputy Darling's computer check showed that plaintiff's license had been suspended, thus

providing probable cause for the arrest.  There is, however, insufficient indication of when

Deputy Darling knew or should have known that plaintiff's license was not suspended, and what,

if any action he took thereafter.  If Deputy Darling took part in initiating or pursuing prosecution

on the charge after he knew or should have known this fact, the elements of lack of probable

cause and malice are met.  Further, it is unclear whether plaintiff suffered any liberty restraint

stemming from this charge, because the procedural progress on the charge is unclear, although

plaintiff alleges it was not dismissed until 2013.  If he chooses to pursue this claim in an amended

complaint, plaintiff is encouraged to amplify this claim.  Because plaintiff alleges that the charge

of unlicensed operation of a motor vehicle was dismissed, the Court finds that he adequately pleads a plausible malicious prosecution claim against Deputy Darling stemming from this charge.

In his motion to amend the complaint, plaintiff appears to seek to add the Oswego County District Attorney ("D.A.") as a defendant and to assert the malicious prosecution claim against the D.A.  Plaintiff alleges that he proved to the D.A. that his licence had never been suspended, but that the D.A. prosecuted him on the charge anyway.  It is unlikely that plaintiff can state any claim against the D.A. that is not barred by absolute prosecutorial immunity; nevertheless, plaintiff may, if he chooses, assert this claim in an amended complaint.

Plaintiff's malicious prosecution claim is dismissed with prejudice as to the charges upon which he was convicted.  Dismissal is denied regarding the charges of endangering the welfare of a child and unlicensed operation of a motor vehicle.  Plaintiff may – but is not required to – replead this claim.  If plaintiff wishes to pursue the 42 U.S.C. § 1983 malicious prosecution claim regarding the charges of endangering the welfare of a child and unlicensed operation of a motor vehicle, and if he files an amended complaint, he must include the claim in the amended complaint.  If he believes he can state a valid cause of action for malicious prosecution against any person instead of, or in addition to, Deputy Darling, he should add allegations supporting such a claim to the amended complaint, and add that person's name to the caption.

**SEVENTH CAUSE OF ACTION - ABUSE OF PROCESS - 42 U.S.C. § 1983**

"While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued."  *Cook*, 41 F.3d at 80 (citation, alteration, and quotation marks omitted).  As with a section 1983 malicious prosecution

claim, to succeed on a section 1983 malicious abuse of process claim, a plaintiff "must establish the claim's elements under state law as well as the deprivation of a constitutional right." *See Hoffman v. Town of Southampton*, 893 F.Supp.2d 438, 446 (E.D.N.Y. 2012) (citing *Cook*, 41 F.3d at 79-80). The *Cook* court explains:

> In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

41 F.3d at 80. In addition, malicious abuse of criminal process constitutes a deprivation of a constitutional right, because it is "by definition a denial of procedural due process." *Id.* (citation omitted) (citing *Torres v. Superintendent of Police*, 893 F.2d 404, 410 (1st Cir. 1990) (procedural due process violations include deprivations of liberty "by a distortion and corruption of the processes of law")). Such a claim states an injury actionable under the procedural due process guarantees of the Fifth and Fourteenth Amendments.

Defendants argue that plaintiff has failed to plead that they pursued the prosecution "in order to obtain a collateral objective that is outside the legitimate ends of the process." The Second Circuit explains the requirement as follows:

> [T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.

*Savino v. City of N.Y.*, 331 F.3d 63, 77 (2d Cir. 2003); *accord Ketchuck v. Boyer*, 2011 WL 5080404, *7-*8 (N.D.N.Y. Oct. 25, 2011); *Abreu v. Romero*, 2010 WL 4615879, at *8 (S.D.N.Y. Nov. 9, 2010) ("In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution."), *aff'd* 466 Fed.Appx. 24 (2d Cir. 2012). Reading plaintiff's

-23-

submissions liberally and drawing all inferences in his favor, the Court finds that plaintiff's

allegations may be read to allege that Deputy Darling sought to exact retribution for plaintiff's

"prior public and published negative criticism of New York State Government, New York State

Police, Oswego County Sheriff's Department, Oswego County Government, Oswego County

Department of Social Services and their respective policies and procedures," and/or to silence

plaintiff and deter him from engaging in future criticism.  Plaintiff has adequately pleaded a

collateral objective.

       Defendants argue that the existence of probable cause at the time process was issued bars

plaintiff from establishing the second *Cook* element, *i.e.,* that defendants acted "with intent to do

harm without excuse or justification."  It has not, however, been established that Deputy Darling

had probable cause to initiate the prosecution against plaintiff on endangering the welfare of a

child, or whether he proceeded with the unlicensed operation charge after he knew or should have

known that plaintiff's license had not been suspended.  In any event, the tort of abuse of process

arises not from the commencement of an action or criminal prosecution without justification, but

rather from "misusing or misapplying process justified in itself for an end other than that which it

was designed to accomplish."  *Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir. 1963).  "The purpose

for which the process is used, once it is issued, is the only thing of importance."  *Id.*; *accord*

*Mangino v. Incorporated Vill. of Patchogue*, 814 F.Supp.2d 242, 248 (E.D.N.Y. 2011) (rejecting

defendants' argument that the existence of probable cause is a complete defense); *VanZandt v.*

*Fish & Wildlife Serv.*, 524 F.Supp.2d 239, 247 (W.D.N.Y. 2007) ("[P]rocess properly issued on

probabl[e] cause can nonetheless be abused."); *but see Abreu*, 2010 WL 4615879, at *8 ("While

probable cause is not an element of an abuse of process claim, under New York law, a showing of

probable cause at the time process is issued suffices ... to establish excuse or justification for the purposes of a defense to abuse of process.").[3]   At this stage of the case, the Court allows plaintiff to proceed with his section 1983 claim for malicious abuse of process against Deputy Darling, and dismissal is denied.  If plaintiff wishes to pursue the 42 U.S.C. § 1983 malicious abuse of criminal process claim, and if he files an amended complaint, he must include the claim in the amended complaint.  In any amended complaint, if plaintiff intends to assert this claim against some other person instead of, or in addition to, Deputy Darling, he should add allegations supporting such a claim to the amended complaint, and should add that person's name to the caption.

## STATE LAW CLAIMS

Plaintiff's remaining causes of action are state law claims.  The second cause of action claims false arrest; the third claims false imprisonment; the fourth claims defamation; and the sixth claims outrageous conduct.  Defendants argue that these claims must be dismissed for plaintiff's failure to serve a timely notice of claim under N.Y. County Law § 52(1) (incorporating N.Y. General Municipal Law § 50-i(1)).  Included in defendants' motion papers is an affidavit of Oswego County Attorney Richard C. Mitchell, Esq. to the effect that on November 20, 2011, plaintiff filed and served a notice of claim, and that there is no other notice of claim from plaintiff.  In his opposition papers, plaintiff does not claim otherwise.

The notice of claim states:

On November 22, 2009, the Respondents wrongfully, intentionally,

---

[3] In its summary order affirming *Abreau*, the Second Circuit approved summary judgment dismissing the malicious abuse of criminal process claim on the ground of failure to show a collateral objective; thus, the circuit court did not reach the issue of probable cause. 466 Fed.Appx. at 26.

negligently and grossly negligently, illegally and discriminatively caused the Claimant to be arrested, charged with a criminal offense and caused the same to be publicized. The event occurred in the Village of Central Square. The charges were placed with the Village Court of the Village of Central Square, New York. The arrest occurred within the Village of Central Square.

The aforesaid wrongful negligence, gross negligence, illegal and discriminatory acts in general were in violation of law and in specific were in violation of New York and United States Civil Rights of the Claimant and on information and belief were further and additionally in conformance to a general pattern of actions and failure to act, and further were substantially contributed to by the acts and omission of the Respondents, County of Oswego, County of Oswego Sheriff's Department, and Reuel A. Todd and other individuals not presently known to provide proper training, rules, regulations and procedures , supervision, advice and training to the Sheriff's Deputies in Oswego County.

The notice of claim is based solely on the events of November 22, 2009, and is untimely as to those events. The notice of claim does not give notice of any claim that accrued within the 90-day period prior to its filing and service on November 20, 2011. Unless plaintiff can show he served a timely notice of claim, amendment of his complaint regarding his state law claims would be futile. All state law claims are dismissed with prejudice and without leave to replead, unless plaintiff can show he served a timely notice of claim. If, however, plaintiff can prove that he served a timely notice of claim, he may make a motion within 20 days of the date of this Memorandum-Decision and Order, requesting that the Court reconsider its dismissal of the state law claims.

### APPOINTMENT OF COUNSEL

Plaintiff has written to the Court requesting appointment of counsel (Dkt. No. 23). There is no constitutional right to appointment of counsel for litigants in civil cases, although a district court may request an attorney to represent any person unable to afford counsel. Plaintiff has demonstrated that he cannot afford counsel, and states that he has been unable to obtain

-26-

Case 5:12-cv-01711-NAM-DEP    Document 27    Filed 03/31/14    Page 27 of 29


representation independently. At this point, however, the Court cannot determine whether plaintiff's claims may have merit. Plaintiff has demonstrated an ability to handle the initial stages of this case without legal assistance. This case is highly fact-driven, and most of the essential facts are within plaintiff's possession. The Court is fully aware of its obligation to treat this *pro se* plaintiff with solicitude, and will continue to assist plaintiff by reading his submissions liberally and explaining applicable legal requirements. If the case reaches trial stage, plaintiff will be appointed trial counsel. At this stage of the case, plaintiff's request for appointment of counsel is denied.

**CONCLUSION**

Plaintiff must file any amended complaint within 30 days of the date of this Memorandum-decision and Order, or the case will proceed solely on the two claims against Deputy Darling as to which dismissal is denied. Any amended complaint shall supersede and replace in its entirety the initial complaint. The amended complaint shall not incorporate by reference any part of the initial complaint, but must include every claim plaintiff wishes to assert and every defendant he wishes to sue. **ANY CLAIM NOT INCLUDED IN THE AMENDED COMPLAINT WILL BE DEEMED TO BE ABANDONED, AND EVERY DEFENDANT NOT NAMED IN THE AMENDED PLEADING WILL NOT BE A DEFENDANT IN THIS ACTION**.

It is therefore

ORDERED that defendants' Rule 12(b)(6) motion (Dkt. No. 12) is granted in part and denied in part as follows:

The following claims are dismissed without leave to replead:


-27-

- All claims against the Oswego County Sheriff's Department;

- All claims under 42 U.S.C. § 1983 against the County of Oswego based on *respondeat superior*;

- All claims under 42 U.S.C. § 1983 for false arrest;

- All claims under 42 U.S.C. § 1983 for malicious prosecution stemming from the prosecution of the charges for which plaintiff was convicted; and

- All state law claims, except that, **if plaintiff can prove that he served a timely notice of claim, he may make a motion within 20 days of the date of this Memorandum-Decision and Order, requesting that the Court reconsider its dismissal of his state law claims**.

The following claims are dismissed with leave to replead within 30 days as set forth

herein:

- All 42 U.S.C. § 1983 claims against the County of Oswego based on a custom or policy;

- All 42 U.S.C. § 1983 claims against Sheriff Ruell A. Todd;

- The 42 U.S.C. § 1983 equal protection claim;

- The 42 U.S.C. § 1983 excessive force claim;

- The 42 U.S.C. § 1983 substantive due process claim; and

- The 42 U.S.C. § 1983 First Amendment retaliation claim.

Dismissal is denied with respect to the following claims:

- The 42 U.S.C. § 1983 malicious prosecution claim against Deputy Sheriff J. Darling stemming from the charges of endangering the welfare of a child and unlicensed operation of a motor vehicle; and

- The 42 U.S.C. § 1983 malicious abuse of criminal process claim against Deputy Sheriff J. Darling.

and it is further

-28-

ORDERED that plaintiff's motion (Dkt. No. 18) for leave to amend the complaint is granted as set forth herein; and it is further

ORDERED that **PLAINTIFF MUST FILE ANY AMENDED COMPLAINT WITHIN 30 DAYS OF THE DATE OF THIS MEMORANDUM-DECISION AND ORDER, OR HE WILL BE DEEMED TO HAVE FORFEITED THE OPPORTUNITY TO REPLEAD, AND THE CASE WILL PROCEED SOLELY ON THE FOLLOWING CLAIMS, AS TO WHICH DISMISSAL IS DENIED:**

- The 42 U.S.C. § 1983 malicious prosecution claim against Deputy Sheriff J. Darling stemming from the charges of endangering the welfare of a child and unlicensed operation of a motor vehicle; and

- The 42 U.S.C. § 1983 malicious abuse of criminal process claim against Deputy Sheriff J. Darling.

and it is further

ORDERED that plaintiff's request for appointment of counsel (Dkt. No. 23) is denied with leave to renew; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Date:    March 31, 2014
         Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

-29-