**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**STEVEN D. BURDICK,**

          **Plaintiff,**

          **v.**                          **5:12-cv-1711 (NAM/DEP)**

**DAVID SWARTS, JAMES F. DARLING,**
**RUELL TODD, OSWEGO COUNTY, and**
**JOHN AND JANE DOE 1-10,**

          **Defendants.**

_____

**APPEARANCES:**

Steven D. Burdick
4102 State Route 3
Fulton, New York 13069
Plaintiff, _pro se_

Office of Frank W. Miller
Frank W. Miller, Esq., of counsel
Christopher M. Militello, Esq., of counsel
6575 Kirkville Road
East Syracuse, New York 13057
_Attorney for Defendants Oswego County, Todd, and Darling_

Office of Attorney General, State of New York
Timothy P. Mulvey, Esq., of counsel
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204
_Attorney for Defendant Swarts_

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

       Plaintiff Steven D. Burdick, who at one point in this litigation was represented by

counsel but is now proceeding _pro se_, brings this action under 42 U.S.C. § 1983 asserting claims

against Defendants David Swarts, the former New York State Commissioner of Motor Vehicles

("Commissioner Swarts"), Oswego County, retired Oswego County Sheriff Ruell Todd

("Sheriff Todd"), and Oswego County Deputy Sheriff James F. Darling ("Deputy Darling")

(collectively, the "Oswego County defendants"), related to a traffic stop and subsequent arrest

on November 22, 2009. (Dkt. No. 157). Now before the Court are Defendants' motions for

summary judgment. (Dkt. Nos. 201, 209). Plaintiff opposes the motions. (Dkt. Nos. 208, 216,

220). Defendants' motions are granted, for the reasons that follow.

## II.     BACKGROUND

### A.  Evidence Before the Court

On June 1, 2018, Commissioner Swarts moved for summary judgment, (Dkt. No. 201),

and included a Statement of Material Facts pursuant to Local Rule 7.1(a)(3), (Dkt. No. 201-1).

The motion also notified Plaintiff of the consequences of not properly responding, pursuant to

Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.2. (Dkt. No. 201, p. 1).

However, Plaintiff's opposition does not specifically respond to Commissioner Swarts's

Statement of Material Facts; rather Plaintiff "relies on his statement of material facts contained

within his third amended complaint." (Dkt. No. 208, p. 2). Similarly, on July 31, 2018, the

County Defendants moved for summary judgment, (Dkt. No. 209), and included a Statement of

Material Facts, (Dkt. No. 209-20). Counsel affirms that Plaintiff was served with the Court's

form Notification of the Consequences of Failing to Respond to a Summary Judgment Motion,

(Dkt. No. 210). Once again, Plaintiff's opposition does not specifically respond to the movants'

Statement of Material Facts; rather Plaintiff sets out his own version of the facts in memoranda

of law, without citing any evidence, and attaches several exhibits. (Dkt. Nos. 216, 216-1).

Plaintiff later submitted an additional memorandum, (Dkt. No. 220), which Defendants move to

strike as "an improper surreply filed without leave." (Dkt. No. 222). The additional memorandum appears to be simply a notarized version of an earlier one. (*See* Dkt. No. 216). Neither memorandum is sworn under oath, or declared under penalty of perjury pursuant to 28 U.S.C. § 1746. Therefore, neither memorandum is admissible as evidence. *See also Hughes v. Elmira College*, 584 F. Supp. 2d 588, 590 (W.D.N.Y. 2008) (finding that the *pro se* plaintiff's statement and memorandum of law were unsworn and inadmissible). Accordingly, Defendants' motion to strike is denied as moot.

Under these circumstances, the Court may accept Defendants' statements of facts as true where appropriate, supported by the record, and unchallenged by Plaintiff with admissible evidence.[1] *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (reasoning that even *pro se* litigants "should be on notice from the very publication of Rule 56(e) that a party faced with a summary judgment motion may not rest upon the mere allegations or denials of the party's pleading and that if the party does not respond properly, summary judgment, if appropriate, shall be entered against him") (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *Riehl v. Martin*, No. 13 Civ. 439, 2014 WL 1289601, at *5, 2013 U.S. Dist. LEXIS 186610, at *12, (N.D.N.Y. Dec. 19, 2013) ("Where, as here, a party has failed to respond to the movant's statement of material facts in the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion."), *report-recommendation adopted*, 2014 WL 1289601, 2014 U.S. Dist. LEXIS 42870 (N.D.N.Y. Mar. 31, 2014).

---

[1] Although Plaintiff is now appearing *pro se*, it is worth noting that this case is the second one Plaintiff has pursued to the summary judgment stage in federal court in the Northern District of New York. *See Burdick v. Kurilovitch, et al.*, No. 14 Civ. 1254.

While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Therefore, the following facts are largely taken from Defendants' statements of facts and supporting evidence, Plaintiff's deposition and trial testimony, and the evidence submitted by Plaintiff, to the extent it is in admissible form.

### B. Plaintiff's License Suspension

Plaintiff is a tow truck operator who resides in Oswego County, New York. (Dkt. No. 201-1, ¶ 6). On January 14, 2009, Plaintiff was issued a traffic ticket for towing on the New York State Thruway without a permit. (Dkt. No. 209-2). Thereafter, Plaintiff's driver's license was suspended on or about July 3, 2009. (*Id.*). Plaintiff testified that he paid the ticket, faxed the receipt to the Fulton Department of Motor Vehicles ("DMV"), and was told "you're all set." (Dkt. No. 209-4, pp. 15–16).

### C. Plaintiff's Arrest

On November 22, 2009, Plaintiff drove a van to a vehicle checkpoint on State Route 49 in Central Square, Oswego County, which was monitored by Defendant Darling, a deputy employed by Defendant Oswego County in its Sheriff's Department. (Dkt. No. 209-20, ¶¶ 2, 5–6). The van Plaintiff drove had no inspection sticker on it. (*Id.*, ¶ 7). Deputy Darling noticed the inspection sticker was missing and directed Plaintiff to pull over into a nearby parking lot. (*Id.*, ¶ 8). Plaintiff pulled the van over into the parking lot. (*Id.*, ¶ 9). Deputy Darling asked Plaintiff about the missing inspection sticker. (*Id.*, ¶ 10). Plaintiff told Deputy Darling that the sticker must have fallen off. (*Id.*, ¶ 11). Deputy Darling asked Plaintiff to provide proof that the

van had been inspected. (*Id.*, ¶ 12). Plaintiff told Deputy Darling that he did not have the inspection paperwork. (*Id.*, ¶¶ 13–14).

Deputy Darling told Plaintiff that he would give Plaintiff a ticket, and Deputy Darling asked Plaintiff for his driver's license, registration card, and proof of insurance. (*Id.*, ¶¶ 15–16). Plaintiff did not have his driver's license with him, and he did not have a current valid insurance card for the van or the registration card for the van. (*Id.*, ¶¶ 17–19). Deputy Darling went to his patrol car and checked a computer system for vehicle and personal data from the DMV concerning Plaintiff. (*Id.*, ¶ 20). The information returned in response to the inquiry was that Plaintiff's driver's license was currently suspended. (*Id.*, ¶ 21).

When Deputy Darling returned to the van, he found Plaintiff sitting in the driver's seat of the van with his eighteen-month old child in his lap. (Dkt. No. 209-3, p. 10). According to Deputy Darling, he told Plaintiff that his license was suspended and that he had to place the child in the passenger's seat and to step out of the van. (*Id*). Deputy Darling testified that Plaintiff did not put the child aside or get out of the van as instructed, but rather said that his license was not suspended, and it was "taken care of." (*Id.*). Deputy Darling testified that Plaintiff repeatedly refused to get out of the van, saying "No, I'm not getting out." (*Id.*, p. 13). Deputy Darling testified that Plaintiff continued to hold the child. (*Id.*).

According to Deputy Darling, Plaintiff then stepped out of the van with the child, lifted the child up away from his body toward Deputy Darling, pulled the child back to his body, got back in the van, and sat back in the driver's seat with the child on his lap again. (*Id.*). Plaintiff then continued to argue with Deputy Darling. (*Id.*). Deputy Darling testified that he had to tell Plaintiff to step out of the van a total of ten times. (*Id.*, p. 15). Eventually, Plaintiff put the child in the passenger's seat, and Deputy Darling arrested him and took him into custody. (*Id.*, p. 16).

Plaintiff admitted that, on November 22, 2009, when Deputy Darling first instructed him to put the child aside and step out of the van because he was under arrest, he did not put the child aside or get out of the vehicle, and instead told Deputy Darling that a ticket he had received in the Town of Van Buren, New York had been paid. (*See* Dkt. No. 209-4, pp. 15–18; Dkt. No. 209-5, pp. 2–3). Plaintiff further testified that Deputy Darling informed him again that he was under arrest and to put his child to the side, but Plaintiff refused and proposed that Deputy Darling call a tow truck and just give Plaintiff a traffic ticket. (Dkt. No. 209-5, p. 3). Plaintiff testified that he had been pulled over for the same thing three months earlier, that he had gone to the DMV and taken care of it, and that he told Deputy Darling "it's a mistake." (*Id.*). Plaintiff testified that Deputy Darling again told him that he was under arrest and to put the child aside, but Plaintiff refused because he wanted to first put the child in a car seat. (*Id.*). Plaintiff testified that Deputy Darling again repeated the instruction, and Plaintiff finally got out. (*Id.*).

According to Deputy Darling, Plaintiff's positioning of the child delayed the arrest because Deputy Darling was concerned for the child's safety. (Dkt. No. 209-3, p. 17). Deputy Darling testified that, before the situation escalated, he had intended to arrest Plaintiff and take him into custody in his patrol car on a charge of aggravated unlicensed operation of a motor vehicle in the third degree, issue him traffic tickets, and then release him. (*Id.*, pp. 15–16). After Plaintiff resisted his instructions to step out of the van and put the child aside, and then held the child between himself and the officer, Deputy Darling decided to arrest Plaintiff and take him into custody for arraignment upon charges of obstruction of governmental administration and endangering the welfare of a child, as well as the aggravated unlicensed operation of a motor vehicle charge. (*Id.*).

According to Ronald L. Casselman, on November 22, 2009, he received a call from the police to "go to Central Square and bring the Burdick company tow truck to tow Steve Burdick's car and get the kids as Steve was an unlicensed driver and could not operate the car." (Dkt. No. 216-1, p. 23).  When Casselman arrived, he found Plaintiff handcuffed in the back of an Oswego County Sheriff's car.  (*Id.*).  Casselman states that he "told the Sheriff there must be some mix-up [about the suspended license] because Steve had paid that fine."  (*Id.*).  Plaintiff's wife arrived at the scene and took the kids, while Casselman towed Plaintiff's vehicle.  (*Id.*).

**D.  Plaintiff's Prosecution**

Plaintiff was arraigned the same day as his arrest, November 22, 2009, at approximately 2:25 p.m., which was not long after Deputy Darling brought him to the police station.  (Dkt. No. 209-17, ¶ 6).  Plaintiff was charged with:1) aggravated unlicensed operation of a motor vehicle in the third degree; 2) endangering the welfare of a child; 3) obstruction of governmental administration in the second degree; and 4) vehicle registration and inspection violations.  (Dkt. No. 209-13).

Following his arraignment, Plaintiff called Defendant Todd, the Sheriff of Oswego County, and asked to meet with him concerning the arrest and charges.  (Dkt. No. 209-20, ¶¶ 3, 39).  Sheriff Todd advised Plaintiff it would not be in Plaintiff's best interest for them to meet, and that any admissions Plaintiff made to Sheriff Todd could be used against him in the criminal case.  (*Id.*, ¶ 39).  Plaintiff insisted, and they met on November 24, 2009.  (*Id.*, ¶¶ 39–40).  Sheriff Todd began the meeting by reminding Plaintiff that any admissions he made could be used against him.  (*Id.*, ¶ 41).  During the meeting, Plaintiff made several admissions, which Sheriff Todd reported to the Oswego County District Attorney's Office in the form of a "Notice of Intent to Use Admission or Confession" pursuant to New York Criminal Procedure Law §

710.30 (or "710.30 notice"). (Dkt. No. 209-12). The 710.30 notice stated in relevant part: "Admissions of no insp. sticker, no letter saying suspension was lifted. Admissions to holding child in front of him and refusing to get out of van." (*Id.*). Later, on August 26, 2010, Defendants Darling and Todd also testified at a *Huntley* hearing, which concerned the admissibility of certain statements made by Plaintiff. (Dkt. No. 209-11).

On August 26, 2011, Plaintiff appeared for a criminal trial before a jury on charges of endangering the welfare of a child, obstruction of governmental administration, and vehicle registration and inspection violations. (Dkt. Nos. 209-3, 209-4). Plaintiff claims that the aggravated unlicensed operation charge was dismissed by the judge in his criminal case a couple weeks before the trial. (Dkt. No. 209-6, p. 2). Defendants Darling and Todd testified at the trial concerning the events leading up to Plaintiff's arrest on November 22, 2009, and Plaintiff's admissions on November 24, 2009. (Dkt. Nos. 209-3, 209-4).

Among other things, Deputy Darling testified that he told Plaintiff to step out of the vehicle ten times before Plaintiff complied, and that Plaintiff held onto the child, delaying Plaintiff's arrest. (Dkt. No. 209-3, pp. 15–17). Among other things, Sheriff Todd testified that Plaintiff admitted that: he did not have paperwork with him on November 22, 2009 showing that he had fixed his suspended license; that he refused to exit the vehicle, and that "he picked the child up and put it in front of him." (Dkt. No. 209-4, pp. 10–11). Sheriff Todd testified that traffic stop escalated into an arrest because Plaintiff "just didn't do what he was asked to do." (*Id.*, p. 10).

On August 27, 2011, a jury convicted Plaintiff of obstruction of governmental administration, as well as failure to produce a registration certificate and operating an

uninspected motor vehicle. (Dkt. No. 209-4, pp. 23–24). The jury acquitted Plaintiff of endangering the welfare of a child. (*Id.*).

### E. Plaintiff's Appeal

Plaintiff appealed his convictions, and on March 3, 2014, an Oswego County court overturned the convictions due to an error in jury selection by the judge in the criminal trial. (Dkt. No. 209-9). The court rejected various arguments as to the merits of the charges and remanded for a new trial. (*Id.*). By decision dated April 26, 2016, a judge of the Hastings Town Court dismissed the surviving charges (obstruction of governmental administration, failure to produce a registration certificate, and operating an uninspected motor vehicle) in the interests of justice pursuant to New York Criminal Procedure Law § 170.40. (Dkt. No. 209-10). Among other things, the judge found that:

1) No arrest would have arisen should the DMV database been properly updated.

2) The only harm caused by the offense was to the equities of the Defendant for the costs of his defense, which could be the responsibility of the NYS DMV.

3) Any evidence in this case is secondary to the cause and effect relationship of the NYS DMV failure to update their systems.

4) The Court does not see misconduct on behalf of any Police Agency, but rather it appears that the Defendants actions could have been more amiable in order to resolve the issues presented.

5) Quite possibly the end result would be one of a fine and surcharge, both of which the Court feels New York State would rather see justice served.

6) The Court sees no useful purpose regarding a judgement of conviction.

(*Id.*).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim") (internal quotation marks omitted).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing . . . a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.

2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations in original) (internal quotation marks and citations omitted)).

## IV.    DISCUSSION

As explained in the Court's Memorandum-Decision & Order dated August 31, 2017, Plaintiff's remaining claims in this case are as follows: 1) as against Deputy Darling, federal and state law malicious prosecution and First Amendment retaliation; 2) as against Sheriff Todd, federal and state law claims for malicious prosecution and a federal claim for supervisory liability; 3) as against Oswego County, vicarious liability under New York State law for the actions of Deputy Darling and Sheriff Todd; and 4) as against Commissioner Swarts and the John Doe Defendants, an apparent federal due process claim, with related claims for supervisory and *Monell* liability.  (Dkt. Nos. 155, 157).  The Court will discuss each claim in turn.

### A.  Malicious Prosecution

The Defendants argue that Plaintiff's Section 1983 malicious prosecution claim fails for several reasons, including: 1) the "for lack of an unconstitutional detention"; and 2) the immunity defenses applicable to their actions.  (Dkt. No. 209-21, pp. 8–18).  The elements of a malicious prosecution claim under New York law are: 1) the defendant initiated a prosecution

against the plaintiff; 2) the defendant lacked probable cause to believe the proceeding could

succeed; 3) the defendant acted with malice; and 4) the prosecution was terminated in the

plaintiff's favor. *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000);

*Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983).

### 1. Unconstitutional Seizure

"When raising a malicious prosecution claim under Section 1983, a plaintiff must also

show a 'seizure or other perversion of proper legal procedures implicating the claimant's

personal liberty and privacy interests under the Fourth Amendment.'" *Mitchell v. City of New

York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Washington v. County of Rockland*, 373 F.3d 310,

316 (2d Cir. 2004)). The issue is generally a matter of law for the court, and the Second Circuit

has "consistently held that a post-arraignment defendant who is 'obligated to appear in court in

connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth

Amendment deprivation of liberty." *Swartz*, 704 F.3d at 112 (quoting *Murphy v. Lynn*, 118 F.3d

938, 946 (2d Cir. 1997)); *see also Perez v. Duran*, 962 F. Supp. 2d 533, 541 (S.D.N.Y. 2013)

(discussing seizure requirement and court appearances).

Defendants argue that Plaintiff cannot show any unconstitutional detention for the

federal malicious prosecution claim because "all the 'seizures' of which Plaintiff could

complain – any mandatory court appearances, and his trial – each time occurred due to the

charge of obstructing governmental administration as well as the other charges against him."

(Dkt. No. 209-21, p. 9). Defendants further argue that the charge for obstructing governmental

administration "was not resolved favorably to Plaintiff because – following his conviction in the

jury trial and the reversal on a technicality on appeal – that charge was ultimately dismissed in

the interests of justice." (*Id.*, p. 10). Defendants argue that "[b]ecause any court appearances

11

and the trial were all necessitated by a charge as to which there was no favorable termination, those 'seizures' could not form the basis of a malicious prosecution claim, and were all constitutional as a matter of law." (*Id.*). Plaintiff's opposition papers do not appear to respond to this argument. (Dkt. Nos. 216, 218).

Here, the undisputed facts show that Plaintiff was charged with: 1) aggravated unlicensed operation of a motor vehicle; 2) endangering the welfare of a child; 3) obstruction of governmental administration; and 4) vehicle registration and inspection violations. (Dkt. No. 209-13). Further, the record shows that the first charge was dismissed, (Dkt. No. 209-6), and a jury acquitted Plaintiff of child endangerment while convicting him of obstructing governmental administration and the vehicle registration and inspection violations. (Dkt. No. 209-4, pp. 23–24). It is undisputed that following Plaintiff's appeal on various grounds, the Oswego County Court found reversible error in the trial court's jury selection process, reversed the judgment, and remanded for a new trial. (Dkt. No. 209-9). Notably, the court rejected Plaintiff's argument that the jury's conviction for obstruction of governmental administration was inconsistent with the acquittal for child endangerment. (*Id.*, pp. 4–6). The court pointed out that:

> The People alleged that the defendant obstructed or prevented or attempted to prevent a police officer from arresting the defendant by holding an eighteen month old child up and *put* in front of him so that the police officer was not able to take the defendant into custody.
>
> Based upon the testimony of Officer Darling . . . , the jury could have found that the defendant obstructed, impaired, or perverted the administration of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function (i.e the defendant's lawful arrest), by means of intimidation, physical force, or interference (i.e. holding a child out in front of him as a shield between himself and the arresting officer), and that the defendant did so intentionally.

(*Id.*, pp. 5–6). Rather than hold a new trial, a Town Justice dismissed the case pursuant to Section 170.40 of the New York State Rules of Criminal Procedure. (Dkt. No. 209-10). In dismissing the case in "furtherance of justice," the court emphasized that "[n]o arrest would have arisen should the DMV database been properly updated," and that "[t]he only harm caused by the offense was to the equities of the Defendant for the costs of his defense, which could be the responsibility of the NYS DMV." (*Id.*). The court also highlighted that it "does not see misconduct on behalf of any Police Agency, but rather it appears that the Defendants actions could have been more amiable in order to resolve the issues." (*Id.*). The court concluded that it "sees no useful purpose regarding a judgment of conviction." (*Id.*).

As this Court previously observed, a dismissal pursuant to Section 170.40 is not an acquittal and typically does not support a malicious prosecution claim. (Dkt. No. 155, p. 12). New York's highest court has held that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 754 N.E.2d 164, 167 (2001) (citing *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 755 (2000)). Ultimately, "the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Id.*

In this case, the circumstances surrounding the dismissal of the trial charges against Plaintiff are clear and undisputed. As Defendants note, the Oswego County Court reversed on the basis of a procedural error with jury selection, but rejected Plaintiff's argument on the merits of the obstruction charge. (Dkt. No. 209-9, pp. 5–6). In dismissing the case in "furtherance of justice," the trial court emphasized that "[n]o arrest would have arisen should the DMV database been properly updated," and that "[t]he only harm caused by the offense was to the equities of

the Defendant for the costs of his defense, which could be the responsibility of the NYS DMV." (*Id.*). The court also highlighted that it "does not see misconduct on behalf of any Police Agency, but rather it appears that the Defendants actions could have been more amiable in order to resolve the issues." (*Id.*). The court concluded that it "sees no useful purpose regarding a judgment of conviction." (*Id.*). This rationale for dismissal does not show that Plaintiff was innocent of the charges, or that Defendants lacked probable cause. Based on the record, the Court finds that the charges against Plaintiff for obstruction of governmental administration and vehicle registration and inspection violations were not terminated in his favor. (*See also* Dkt. No. 155, p. 13).

That leaves two potentially viable charges for Plaintiff's federal malicious prosecution claim: 1) endangering the welfare of a child; and 2) aggravated unlicensed operation of a motor vehicle. As the Court previously noted, Plaintiff was acquitted of the former, and the circumstances surrounding the latter are not entirely clear. (*See also* Dkt. No. 155, p. 14). However, Defendants correctly point out that further inquiry on these charges is not necessary because Plaintiff's federal malicious prosecution claim must rise or fall by showing an unconstitutional seizure. The Second Circuit has held that a plaintiff cannot show such a seizure unless it was "solely attributable" to the unlawful charges. *Coleman v. City of New York*, 688 F. App'x 56, 58 (2d Cir. 2017). In that case, the plaintiff was charged with, among other things, assault, obstruction of governmental administration, reckless driving, and traffic violations. The Second Circuit sustained dismissal of the plaintiff's malicious prosecution claim predicated on the assault charges because "[e]ven if the assault charges had never been, [the plaintiff] still would have had the obligation to appear on account of the other criminal charges (which cannot support a malicious prosecution claim, because they were indisputably supported by probable

cause) and the traffic code violations (which cannot support a malicious prosecution claim because they were terminated unfavorably to [the plaintiff] by [adjournment in contemplation of dismissal])." 688 F. App'x at 58.

Likewise, in this case Plaintiff cannot sustain a federal malicious prosecution claim based on the child endangerment and aggravated unlicensed operation charges because the record shows that, even if those charges had never been brought, he would have had the obligation to appear in court on the obstruction of governmental administration charge. (*See* Dkt. Nos. 209-3, 209-4, 209-9, 209-10, 209-13). As discussed above, the obstruction of governmental administration charge cannot support a federal malicious prosecution claim because it was not terminated in Plaintiff's favor. Accordingly, based on the undisputed facts, Plaintiff's federal malicious prosecution claim must be dismissed. *See also Warner v. Freeman*, No. 14 Civ. 1192, 2017 WL 4227655, at *2, 2017 U.S. Dist. LEXIS 154743, at *7 (D. Conn. Sept. 22, 2017) (granting summary judgment on malicious prosecution claim where the plaintiff failed to show "that he suffered a post-arraignment constitutionally cognizable deprivation of liberty attributable to the criminal trespass charge"); *Flynn-Rodriguez v. Cheng*, No. 14 Civ. 2287, 2017 WL 3278889, at *3, 2017 U.S. Dist. LEXIS 120775, at *6 (E.D.N.Y. Aug. 1, 2017) ("Though Ms. Flynn-Rodriguez suffered a deprivation of liberty, the resisting arrest charge was not the sole cause of that deprivation; the deprivation was also caused by other charges that were supported by probable cause. The malicious prosecution claim is dismissed."); *Othman v. City of New York*, No. 13 Civ. 4771, 2015 WL 1915754, at *6, 2015 U.S. Dist. LEXIS 54903, at *14 (E.D.N.Y. Apr. 27, 2015) (dismissing claim of malicious prosecution because the plaintiff failed to allege "any deprivation of liberty that stems exclusively from those charges that may have terminated in his favor").

## 2. Immunity Defenses

Moreover, even if Plaintiff could show evidence of an unconstitutional seizure, his malicious prosecution claim against Defendants Darling and Todd would fail because they are entitled to absolute immunity and/or qualified immunity for their actions. It is well-established that in Section 1983 actions, all witnesses, including police officers, are absolutely immune from civil liability based on their testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 343 (1983). The Supreme Court observed that "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Id.* In judicial proceedings, the deterrer of potential civil liability is unnecessary to prevent false testimony because perjury is a serious *criminal* offense. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). Therefore, Defendants Darling and Todd are entitled to absolute immunity for their testimony at trial, even if it was false.

The same is also true for their testimony at the hearing pursuant to *People v. Huntley*, 204 N.E.2d 179 (1965) (providing a criminal defendant with a pre-trial hearing to determine whether statements are admissible). The Second Circuit has recognized that "police officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony." *Daloia v. Rose*, 849 F.2d 74, 76 (2d Cir. 1988). Like a suppression hearing, the purpose of the *Huntley* hearing was to determine the admissibility of statements made by Plaintiff (then defendant). (Dkt. No. 209-11). Thus, Defendants Darling and Todd are absolutely immune for all of their courtroom testimony in the criminal case against Plaintiff.[2]

---

[2] The record shows that Deputy Darling did not act as a "complaining witness" at the hearing, which was focused on Plaintiff's admissions. *See Rehberg*, 566 U.S. at 370.

*See also Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (finding that the defendant officer was entitled to absolute immunity for grand jury testimony, but not for allegedly false statements and reports that "laid the groundwork" for indictment).

The remaining question is whether Defendants Darling and Todd are immune from liability for their other actions related to the prosecution. As to Deputy Darling, the record shows that he provided information about Plaintiff's arrest, which led to Plaintiff's arraignment shortly thereafter on November 22, 2009. (Dkt. No. 209-13). The Defendants argue that Deputy Darling had at least "arguable probable cause," and therefore he is entitled to qualified immunity for initiating Plaintiff's prosecution. (Dkt. No. 209-21, pp. 16, 22).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, ___U.S.___, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where the relevant facts are not in dispute, the Court can decide qualified immunity as a matter of law. *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).

Probable cause is a "complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted)). Moreover, qualified immunity is a defense on the same claim if there was *arguable probable cause*, which

"exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia*, 779 F.3d at 92 (citation omitted). In determining whether an officer's challenged conduct was objectively reasonable, courts consider the information possessed by the officer at the time of that conduct, but not the officer's "subjective intent, motives, or beliefs." *Id.* In deciding qualified immunity, the Court will consider the facts available to Deputy Darling at the time of arraignment, on each charge.

First, "a person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner." N.Y. Veh. & Traf. Law § 511(a). It is undisputed that at the time of Plaintiff's arrest, Deputy Darling's computer check of the DMV database showed that Plaintiff's license had been suspended, and that Plaintiff did not possess any paperwork showing otherwise. (Dkt. No. 209-3, pp. 9–10; Dkt. No. 209-4, pp. 16–17; Dkt. No. 209-7, pp. 15–17; Dkt. No. 209-12). At the motion to dismiss stage, the Court observed that it could not "determine whether and when Deputy Darling knew or should have known that plaintiff's license was not suspended." (Dkt. No. 155, p. 13). Now on summary judgment, the evidence shows that Deputy Darling relied on the DMV information about Plaintiff's license, both for the arrest and the arraignment, which occurred in a short span on the same day. (Dkt. No. 209-17, ¶ 13; Dkt. No. 209-8, p. 12). Although Plaintiff alleges that Deputy Darling should have known that the DMV information was unreliable, (Dkt. No. 157, ¶ 220), he has not adduced any evidence in support of this theory,

nor has he shown that Deputy Darling learned of the mistake before Plaintiff's arraignment.[3] Based on these facts, it was objectively reasonable for Deputy Darling to believe on November 22, 2009 that probable cause existed to charge Plaintiff for aggravated unlicensed operation of a motor vehicle in the third degree.

Second, "a person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ." N.Y. Penal Law § 195.05. In this case, it is undisputed that Plaintiff refused repeated orders from Deputy Darling to get out of his vehicle. (*See* Dkt. No. 209-4, pp. 15–18; Dkt. No. 209-5, pp. 2–3; Dkt. No. 209-12). It also undisputed that Plaintiff held onto his child while doing so. (*Id.*). Based on these facts, it was objectively reasonable for Deputy Darling to believe on November 22, 2009 that probable cause existed to charge Plaintiff for obstruction of governmental administration.

Third, as relevant here, a person is guilty of endangering the welfare of a child when he "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health." N.Y. Penal Law § 260.10(1). Again, it is undisputed that, while refusing Deputy Darling's orders to exit the vehicle, Plaintiff held onto his child. (*See* Dkt. No. 209-4, pp. 15–18; Dkt. No. 209-5, pp. 2–3; Dkt. No. 209-12). Deputy Darling testified at the criminal trial that the child prevented him from arresting

---

[3] Although Plaintiff submitted an affidavit from Casselman, who allegedly informed officers at the scene that Plaintiff had paid the fine and "there must be some mix-up" about the license, Deputy Darling was under no obligation to credit that explanation, absent supporting evidence.

19

Plaintiff, and that he was concerned about injuring the child. (Dkt. No. 209-3, p. 17). While Plaintiff claims that he held on for the child's safety, based on the facts available to Deputy Darling at the time, Plaintiff's conduct could also be viewed as likely to be injurious to the child. At a minimum, officers of reasonable competence could disagree on whether there was probable cause to charge Plaintiff for endangering the welfare of a child.

In sum, based on the undisputed facts, there was arguable probable cause to charge Plaintiff with aggravated unlicensed operation of a motor vehicle, endangering the welfare of a child, and obstructing governmental administration. Therefore, Deputy Darling is also entitled to qualified immunity for initiating the prosecution on those charges.

As to Sheriff Todd, the record shows that, after arraignment, he met with Plaintiff on November 24, 2009 to discuss the charges. (Dkt. No. 209-11, pp. 16–17; Dkt. No. 209-12). Plaintiff requested the meeting and Sherriff Todd warned him that any admissions could be used against him. (Dkt. No. 209-20, ¶¶ 39–40). In the meeting, Plaintiff made a series of admissions, which Sheriff Todd reported to the Oswego County District Attorney's Office, in the form of a "Notice of Intent to Use Admission or Confession" pursuant to New York Criminal Procedure Law § 710.30 (or "710.30 notice"). (Dkt. No. 209-12). The 710.30 notice stated in relevant part: "Admissions of no insp. sticker, no letter saying suspension was lifted. Admissions to holding child in front of him and refusing to get out of van." (*Id.*). The 710.30 notice is consistent with Plaintiff's own testimony, (Dkt. No. 209-4, pp. 15–18), and Plaintiff has not raised an issue of fact otherwise. Therefore, it was objectively reasonable for Sheriff Todd to believe that his action, in preparing the notice and reporting it to the District Attorney's Office, did not violate Plaintiff's rights or clearly established law. Accordingly, Sheriff Todd is entitled to qualified immunity for this action. *Cf. Coggins*, 776 F.3d at 114 (finding that qualified

immunity did not shield the defendant officer on malicious prosecution claim given evidence that he made *false* statements to the district attorney, because such conduct "constitute[s] a violation of clearly established law, and no objectively reasonable public official could have thought otherwise").

### B. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must show: 1) that he has an interest protected by the First Amendment; 2) that the defendant's actions were motivated or substantially caused by the plaintiff's exercise of that right; and 3) that the defendant's actions effectively chilled the exercise of his First Amendment right or caused some other type of harm. *See Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

As previously noted, Plaintiff could have a potential First Amendment retaliation claim based on the theory that, after he spoke out and verbally challenged Deputy Darling at the time of the arrest, Deputy Darling retaliated by initiating the prosecution against Plaintiff for aggravated unlicensed operation of a motor vehicle, obstruction of governmental administration, and child endangerment, all without probable cause.[4] (Dkt. No. 155, p. 16). The Court found that "[a]ny claim that Deputy Darling had a retaliatory motive when he arrested Plaintiff lacks merit." (*Id.*). The Court noted that "the question of whether Deputy Darling had probable cause to charge plaintiff with endangering the welfare of a child and obstructing governmental administration cannot be determined on a motion addressed to the second amended complaint." (*Id.*). Further, the Court observed that, based on the pleadings, it was unclear if Deputy Darling

---

[4] The Court dismissed any First Amendment retaliation claim against Sheriff Todd. (Dkt. No. 155, p. 21).

at some point "knew or should have known that in fact plaintiff's license was valid," which could support a retaliation claim for initiating and continuing the prosecution for aggravated unlicensed operation of a motor vehicle. (*Id.*).

The Defendants argue that Plaintiff's First Amendment retaliation claim against Deputy Darling must fail for several reasons including: 1) lack of any evidence of retaliatory causation"; and 2) the immunity defenses applicable to their actions. (Dkt. No. 209-21, pp. 21–22). The latter argument is dispositive here. Plaintiff's First Amendment claim runs up against the same immunity defenses as his claim for malicious prosecution. As discussed above, Deputy Darling is absolutely immune for his testimony in the judicial proceedings against Plaintiff, which therefore, cannot support Plaintiff's First Amendment retaliation claim. Further, Deputy Darling is entitled to qualified immunity for charging Plaintiff and initiating the prosecution, as discussed above. Accordingly, Plaintiff's First Amendment retaliation claim fails for these same reasons. *See also Collins v. City of New York*, 295 F. Supp. 3d 350, 368 (S.D.N.Y. 2018) ("Because the Court has already concluded that the Defendants had arguable probable cause to arrest the Plaintiffs for disorderly conduct, . . . the Court finds that the Defendants are entitled to qualified immunity on Plaintiffs' First Amendment retaliation claim on the basis of that same arguable probable cause.").

**C.  Supervisory Liability Against Sheriff Todd**

As the Court previously stated, Plaintiff pled a federal claim for supervisory liability against Sheriff Todd, based on his alleged failure to remedy an ongoing violation of Plaintiff's constitutional rights, specifically Deputy Darling's allegedly malicious and retaliatory prosecution of Plaintiff. (Dkt. No. 155, pp. 20–21). Under Section 1983, "a supervisor may not be held liable merely because his subordinate committed a constitutional tort." *Poe v. Leonard*,

282 F.3d 123, 140 (2d Cir. 2002). As relevant here, Sheriff Todd may be liable as supervisor to Deputy Darling if Plaintiff can show that Sherriff Todd, "after being informed of the violation through a report or appeal, failed to remedy the wrong." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff's theory appears to be as follows: 1) Deputy Darling initiated the prosecution on November 22, 2009; 2) Sheriff Todd met with Plaintiff on November 24, 2009 and learned that the prosecution was unconstitutional; and 3) Sheriff Todd did nothing to remedy the violation thereafter. (Dkt. No. 157, pp. 28–32). The Defendants argue that Plaintiff's claim fails for several reasons, including that Deputy Darling did not engage in unconstitutional conduct, and that Sheriff Todd is entitled to qualified immunity "because there was at least arguable probable cause as to all of the charges." (Dkt. No. 209-21, p. 18).

Once again, the above qualified immunity analysis dictates dismissal of Plaintiff's claim. The record shows that Sheriff Todd met with Plaintiff on November 24, 2009, at which time Plaintiff discussed his November 22, 2009 arrest. (Dkt. No. 209-11, pp. 16–17; Dkt. No. 209-12). Although Plaintiff offered his version of events, he also made several important admissions: 1) not having an inspection sticker; 2) not having a letter saying his license suspension was lifted; 3) holding his child between himself and the officer; and 4) refusing to get out of the van when instructed by the officer. (Dkt. No. 209-12). These admissions are consistent with Deputy Darling's testimony as to the factual basis for arresting and charging Plaintiff. (*See* Dkt. No. 209-3, pp. 7–17). Moreover, even though Plaintiff tried to justify his actions and put them in context, these admissions are consistent with Plaintiff's own testimony. (Dkt. No. 209-4, pp. 15–18).

Based on the undisputed facts, there was at least arguable probable cause for Deputy Darling to initiate prosecution on the charges for aggravated unlicensed operation of a motor vehicle, endangering the welfare of a child, and obstruction of governmental administration, and the November 24, 2009 meeting did not suggest otherwise. Therefore, it was objectively reasonable for Sheriff Todd to believe that Plaintiff did not suffer a constitutional violation that needed remedying. Accordingly, Sheriff Todd is entitled to qualified immunity on Plaintiff's supervisory liability claim. *See also Levy v. City of New York*, 935 F. Supp. 2d 575, 593 (E.D.N.Y. 2013) ("The Court concludes Sgt. Reed is entitled to qualified immunity on Plaintiff's supervisory liability claim for substantially the same reasons he is entitled to qualified immunity on the false arrest and malicious prosecution claims.").

### D. Due Process Claim

Plaintiff alleges that Commissioner Swarts and the John Doe Defendants (apparently unknown employees of the DMV) violated his rights to procedural and substantive due process under the Constitution by failing to lift Plaintiff's license suspension, allowing it to remain in effect for eight months, and reporting his license as suspended to the police during that time, when it was not. (Dkt. No. 157, pp. 17–23). Plaintiff also alleges that Commissioner Swarts and the John Does are subject to supervisory liability because they were aware of the license issue and failed to remedy it. (*Id.*, pp. 23–24). Further, Plaintiff alleges that they exhibited deliberate indifference and their actions are the policy, custom, and practice of the DMV. (*Id.*).

In general, a procedural due process violation under the Fourteenth Amendment occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and opportunity to be heard. *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009) (citing *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d

985, 995 (2d Cir. 1997)).  On the other hand, substantive due process "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'"  *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (1995) (quoting *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir. 1994)).

Commissioner Swarts argues that "the record is devoid of any facts that support personal involvement of former Commissioner Swarts in any constitutional violations."  (Dkt. No. 201, p. 2).  In response, Plaintiff states that Commissioner Swarts "did either directly or indirectly violate Plaintiffs constitutional rights by his actions/or lack of actions.  Defendant, Swarts, has personal knowledge of, and was in direct supervisory command of the DMV personnel, and the policies and procedures utilized by the employees of the DMV[.]"  (Dkt. No. 208).

Personal involvement of an individual defendant "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Indeed, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  "Because vicarious liability is inapplicable to . . . § 1983 suits," Plaintiff must raise a genuine dispute as to whether "each Government-official defendant, through the official's *own individual actions*, has violated the Constitution."  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added).

Here, Plaintiff has not adduced any evidence to show that Commissioner Swarts directly participated in the alleged failure to lift Plaintiff's license suspension.  In Commissioner Swarts's sworn responses to Plaintiff interrogatories, he stated that he did not possess any

meaningful information regarding the suspension of Plaintiff's license, the continuation of that suspension, or the specifics of the incident forming the basis of this action. (Dkt. No. 195-1). Plaintiff's conclusory assertions, unsupported by any evidence, are not enough to raise an issue of fact as to Commissioner Swarts's personal involvement on a direct participation theory.[5]

Nor has Plaintiff adduced any evidence to show personal involvement of Commissioner Swarts under any of the other methods recognized by the Second Circuit. Besides direct participation, Plaintiff could show that: 1) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; 2) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; 3) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or 4) the defendant exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (citing *Colon*, 58 F.3d at 873).

Plaintiff appears to allege most of these theories, (Dkt. No. 157, pp. 13–24), but there is simply no evidence in the record to support them. For example, there is no evidence that Commissioner Swarts was made aware of Plaintiff's license suspension and failed to remedy it. Similarly, there is no evidence that he failed to act on information that unconstitutional acts were occurring. Moreover, there is no evidence as to who at the DMV failed to update the

---

[5] Plaintiff objects that he was not afforded the opportunity to take the deposition of Commissioner Swarts, but United States Magistrate Judge David E. Peebles declined that request because there was no evidence that Commissioner Swarts had relevant information. (Dkt. No. 199, p. 7).

database, much less that Commissioner Swarts supervised that person.[6] Plaintiff repeatedly alleges that the DMV (led by Commissioner Swarts) delayed in lifting license suspensions, which amounted to an unconstitutional policy, custom, and practice, (see Dkt. No. 157, ¶ 147), but he has not adduced any supporting evidence. Plaintiff's conclusory assertions, while enough to state a claim, are not enough to survive summary judgment. See Kia P. v. McIntyre, 235 F.3d 749, 763 (2d Cir. 2000) ("A plaintiff may not survive a properly asserted motion for summary judgment on the basis of conclusory allegations alone."); Shariff v. Poole, 689 F. Supp. 2d 470, 476 (W.D.N.Y. 2010) ("[T]he pro se plaintiff must still establish the existence of genuine issues of material fact to survive a motion for summary judgment; the pro se party's 'bald assertion,' when unsupported by evidence, is insufficient.").

Likewise, to the extent Plaintiff alleges a claim pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), that claim must fail for the same reasons. Plaintiff's theory appears to be that Commissioner Swarts, acting as official policymaker for the DMV, created the policy/practice whereby the DMV did not update their database, or ignored that policy/practice. (Dkt. No. 157, ¶ 94). However, once again, Plaintiff has not adduced any evidence whatsoever that this policy/practice existed, much less that Commissioner Swarts created or ignored it. For example, there is no evidence of an explicit policy or practice regarding DMV database updates. Nor is there evidence of a pattern of similar delays in clearing license suspensions from the DMV database, which might suggest a policy or practice. Rather, Plaintiff has alleged a single incident involving his license, and he then jumps to the conclusion that it was caused by a policy

---

[6] Although Plaintiff alleges that unknown John/Jane Doe Defendants at the DMV failed to lift his suspension, he has not identified these individuals or shown evidence of their involvement in infringing activity, and with discovery now closed, any claims against them must be dismissed. See Blake v. Race, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) (citing cases).

27

or practice at the DMV. As Defendants note, "Plaintiff makes only conclusory and speculative allegations, without offering any evidence that any of the named defendants actually created a policy or custom under which an unconstitutional practice occurred." (Dkt. No. 201-2, p. 6). Simply put, these allegations are not enough to sustain a *Monell* claim on summary judgment. *See Nardoni v. City of New York*, 331 F. Supp. 3d 116, 119 (S.D.N.Y. 2018) (granting summary judgment on *Monell* claim because "Plaintiff points to no evidence in the record of a policy or custom by the City of New York"); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 172 (E.D.N.Y. 2010) (finding that "conclusory allegation does not allow plaintiff's *Monell* claim to survive summary judgment").

### E. State Law Claims

Finally, having found that all of Plaintiff's federal claims are subject to summary judgment, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims, including any claims against Oswego County for vicarious liability under New York State law. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by

summary judgment") (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)).

Accordingly, Plaintiff's state law claims against Defendants are dismissed.

## V.     CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Swarts's motion for summary judgment (Dkt. No. 201) is **GRANTED**; and it is further

**ORDERED** that the Oswego County Defendants' motion for summary judgment (Dkt. No. 209) is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to strike is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 157) is **DISMISSED with prejudice**; and it is

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date:   March 28, 2019
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

29